

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 6, 2023

**BY EMAIL AND ECF**
The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Kareem Gibbons*, 21 Cr. 668 (GHW)

Dear Judge Woods:

    The Government respectfully submits this letter in advance of sentencing in this matter for defendant Kareem Gibbons (the "defendant"), which is scheduled for February 13, 2023. The defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") in which the parties stipulated to a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 27 to 33 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Department ("Probation") agrees with the Stipulated Guidelines Range and has recommended a sentence of 27 months' imprisonment, i.e., the low-end of the Guidelines range. (Presentence Investigation Report ("PSR") at 18.) The defendant requests a below-Guidelines sentence of 20 months.

    For the reasons set forth below, the Government submits that a sentence at the high end of the Stipulated Guidelines Range, i.e., 33 months' imprisonment, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.    Background**

    **a.  Offense Conduct**

    On or about May 1, 2021, the defendant was in the vicinity of the corner of Southern Boulevard between Jennings Street and East 172nd Street in the Bronx. The defendant was holding a firearm and having a conversation with another man ("Individual-1"). Video surveillance footage shows Individual-1 reaching his hand out towards the firearm while engaged in discussion with the defendant.[1] The defendant eventually handed the firearm to Individual-1, who pointed the firearm in the air, in the general direction of elevated subway tracks above where the defendant and Individual-1 were standing, and discharged it five times (the "Shooting"). Individual-1 then returned the firearm to the defendant, who placed it in his waistband and walked away. Law

---

[1] The Government is providing the Court with a copy of the surveillance camera footage depicting the Shooting.

enforcement has not identified evidence indicating that anyone was injured by the Shooting and/or that a subway was passing by on the elevated tracks at the time of the Shooting.

Law enforcement arrived on the scene shortly thereafter and identified five shell casings. The defendant, who has previously been convicted of a crime punishable by more than one year in prison, and in fact was sentenced to more than one year, was thereafter identified as the individual who handed the firearm to Individual-1 and received the firearm back from Individual-1 after the Shooting. The defendant was charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

### b. Procedural History & Obstruction of Justice Enhancement

The defendant was arrested on a federal complaint on or about June 8, 2021 and detained pending trial.[2] In November 2021, the defendant was released on bail conditions. Thereafter, on March 2, 2022, the defendant failed to appear for a status conference with the Court. The Court issued an order requiring the defendant to appear at a conference six days later, i.e., March 8, 2022. After the defendant failed to appear at the March 8 conference, the Court signed a bench warrant. The defendant was ultimately located and arrested pursuant to that bench warrant in the vicinity of Allentown, Pennsylvania on or about June 8, 2022.[3]

---

[2] As noted in the defendant's submission and the PSR, the defendant had previously been arrested with respect to the charged conduct by state authorities on or about May 24, 2021. (PSR ¶ 12.) That case was dismissed following the defendant's federal charges. The Government defers to the Bureau of Prisons with respect to calculating the amount of time served by the defendant, but understands that the defendant is likely to receive credit for the period that he was in state custody prior to his federal arrest, i.e., on or about May 24, 2021 through on or about June 8, 2021, since his state charges were dismissed and he therefore will not otherwise receive credit for that time towards any other criminal sentence.

[3] 

After being rearrested on June 8, 2022, the defendant pled guilty pursuant to the Plea Agreement on August 31, 2022. In the Plea Agreement, the parties stipulated to a base offense level of 14, because the defendant was a prohibited person when he committed the offense. *See* U.S.S.G. § 2K2.1(a)(6)(A). The parties also stipulated to a two-point obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 as a result of the defendant's failure to appear in court in March 2022. *See* U.S.S.G. § 3C1.1, Application Note 4(e). As a result of the defendant's failure to appear in Court and, accordingly, his obstruction of justice, the Plea Agreement did not credit the defendant with acceptance of responsibility. Therefore, the applicable Guidelines offense level is 16. The parties stipulated that the defendant had six criminal history points and, therefore, a Criminal History Category of III, resulting in the Stipulated Guidelines Range of 27 to 33 months' imprisonment.

Probation has calculated the applicable Guidelines range in accordance with the Plea Agreement.[4]

## II.  Discussion

### a.  Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which

---

[4] In the draft PSR, Probation calculated that the base offense level was 20, rather than 14, because the defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence, specifically, assault in the second degree, in violation of N.Y.P.L. § 120.05. This would have resulted in an overall offense level of 22 and a Guidelines range of 51 to 63 months' imprisonment. The defendant objected to this calculation because the defendant's assault conviction related to a specific subsection, specifically N.Y.P.L. § 120.05(3), which a court in the Eastern District of New York had recently held was not a "crime of violence" pursuant to the Guidelines since it may be committed unintentionally or accidentally. *See Grant v. United States*, No. 06-cr-732 (DLI), 2017 WL 2881132 at *4 (E.D.N.Y. July 5, 2017) (citing *People v. Campbell*, 72 N.Y.2d 602, 604 (1988)). (*See* PSR at 16.)

The PSR states that the Government "is in agreement with defense counsel's objection." (PSR at 16.) It is correct that the Government informed Probation that it had agreed to a base offense level in the Plea Agreement of 14, rather than 20, in light of the fact that the defendant had been convicted specifically of N.Y.P.L. § 120.05(3) and the case law described above. And the Government is not advocating that this Court should reach a different conclusion. However, the Government did not explicitly say to Probation that *Grant* was correctly decided and/or that N.Y.P.L. § 120.05(3) is not a crime of violence.

"should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### b. A Sentence at the High End of the Guidelines is Reasonable and Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a sentence at the high end of the Guidelines range of 27 to 33 months' imprisonment. The defendant's possession of a firearm and ammunition – for any reason – was a serious crime. The illegal possession of firearms by individuals previously convicted of felonies puts communities at significant risk of gun violence and other crime. *See United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000) ("Possession of a gun greatly increases one's ability to inflict harm on others and therefore involves some risk of violence," and the prohibition on gun possession by those previously convicted of a felony "seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime.").

Not only did the defendant possess this firearm and ammunition, but he handed the firearm to Individual-1, who immediately fired it in an incredibly dangerous manner and returned it to the defendant. The Government has not identified evidence suggesting that there was a subway passing by while Individual-1 fired the weapon in the direction of the overhead subway tracks, nor any other evidence suggesting that any individual was in the line of fire and/or harmed by the bullets. That said, there can be no dispute that firing a weapon in the air five times in a densely populated Bronx neighborhood is remarkably dangerous conduct. And the surveillance video does show another civilian walking past the defendant and Individual-1 as Individual-1 fires the weapon. (That individual immediately begins running away.) While the defendant is not alleged

to have fired the weapon himself, he did possess the weapon immediately before and after the Shooting, and appears on the video to have had minimal reaction or surprise to the firing of shots.

In addition, a just sentence in this case must promote respect for the law and general deterrence by appropriately accounting for the defendant's failure to appear in Court in March 2022. The Court placed its trust in the defendant when it agreed to release him after five months of pretrial custody. The defendant breached that trust and disrespected the law and proper functioning of the criminal justice system by not only failing to appear at a court conference, but taking steps to evade detection, including by changing his phone number and moving to Allentown, Pennsylvania. A just sentence in this case must therefore promote respect for the law and provide a deterrent effect on any other pretrial defendants considering fleeing rather than appearing in Court as required.

Finally, as detailed by Probation and acknowledged by the defendant, the defendant has a significant criminal history and has previously spent a lengthy period of time in prison. That lengthy term of incarceration did not discourage the defendant from illegally possessing ammunition (and a firearm) in May 2021. The sentence in this case must therefore provide specific deterrence to the defendant and hopefully impress upon him that continued illegal activity will have significant consequences.

### III. Conclusion

For the reasons set forth above, a sentence at the high end of the Guidelines range, specifically 33 months' imprisonment, is warranted.

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___/s/_____
Matthew Weinberg
Assistant United States Attorneys
(212) 637-2386

cc: Donald Yannella, Esq.